**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

THOMAS BUILDERS, INC.,
*a Tennessee Corporation*,

Plaintiff,

v. CIVIL ACTION NO. 5:26-cv-00274

MIDWAY HOSPITALITY, LLC,
*a West Virginia Limited Liability Company*,

Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Motion to Dismiss Counterclaim* (Document 11), the *Memorandum in Support of Motion to Dismiss Counterclaim* (Document 12), *Midway Hospitality, LLC's Response in Opposition to Thomas Builders, Inc.'s Motion to Dismiss Counterclaim* (Document 19), and the *Reply Memorandum in Support of Motion to Dismiss Counterclaim* (Document 23), as well as the *Counterclaim* (Document 8). For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

## FACTUAL ALLEGATIONS

The Plaintiff, Thomas Builders, Inc., initiated this action on April 16, 2026, asserting claims of breach of contract and enforcement of mechanic's lien against the Defendant, Midway Hospitality, LLC. On May 11, 2026, the Defendant filed its answer to the complaint, as well as a counterclaim against Thomas Builders.

The parties entered into a written proposal on December 23, 2019, for the design and construction of a Fairfield Inn & Suites hotel in Beckley, West Virginia. The proposal included a construction timeline of sixteen months to begin once drawings were complete and all necessary approvals, including those related to permits and financing, were obtained. It further included "payment, retainage, claim, delay, and closeout provisions," as well as a provision "that no claims not previously made in writing could be made by either party once the Certificate of Occupancy was obtained." (*Id.* at ¶ 7.) On or about March 23, 2021, Thomas Builders provided Midway with an AIA Document A141-2004 Standard Form of Agreement Between Owner and Designer-Builder. However, Midway alleges that it "did not execute the AIA form," "did not assent to be bound by the unsigned AIA form, and did not agree that the unsigned AIA form would form the basis for any aspect of the parties' contract." (*Id.* at ¶¶ 9, 14.)

On June 20, 2022, the parties entered into a Master Change Order, which maintained the sixteen-month construction timeline. The project was scheduled to begin on August 22, 2022, as confirmed by Thomas Builders' project manager, with an expected completion date of December 2023. Midway required the project to be completed within the expected timeframe due to franchise and financing requirements, and to generate revenue and mitigate carrying costs. Thomas Builders represented that it could be completed within that timeframe. Midway alleges that despite Thomas Builders' representations related to the December 2023 completion date, it failed to complete construction by that time and did not turn over the project until June 2025, approximately eighteen months past the promised completion date.

In addition to the parties' contractual relationship, Midway alleges that they "had a special relationship arising from the nature of [Thomas Builders'] design/build role." (*Id.* at ¶ 27.)

Specifically, it alleges that Thomas Builders "held itself out as an experienced hotel design-builder and general contractor with specialized knowledge," had "superior and specialized construction expertise," and "undertook advisory, supervisory, and information-supplying roles." (*Id.* at ¶¶ 27-28, 31.) Midway alleges that Thomas Builders breached various duties owed to it, including "duties to exercise reasonable care in supplying information for Midway's business guidance, to avoid negligent misrepresentations, to avoid false or reckless lien filings, to avoid slandering Midway's title, to refrain from tortiously interfering with Midway's financing and business relationships, and to exercise the degree of care, skill, and diligence ordinarily exercised by design-builders and construction professionals in similar circumstances." (*Id.* at ¶ 35.) It further alleges that Thomas Builders failed to reasonably manage and coordinate the work in accordance with their contract, applicable law, and applicable construction standards, "failed to properly supervise and coordinate critical-path electrical and MEP work," "failed to maintain adequate and qualified manpower," "failed to timely sequence interior finishes and commissioning activities," "failed to implement reasonable recovery measures necessary to bring the Project back on schedule," "allowed unlicensed vendors to perform work for months," and "failed to provide adequate documentation to substantiate claims of excusable delay." (*Id.* at ¶¶ 47-53.)

Midway alleges that as a result of Thomas Builders' actions or omissions, it accrued increased interest in excess of $1,150,000.00, lost hotel revenue of at least $5,100,000.00, and "incurred other increased losses associated with additional management, storage, utilities, legal fees, expert fees, closeout, title issues, and other project impacts." (*Id.* at ¶ 59.) It also alleges that after the project's completion and it satisfied its payment obligations, Thomas Builders recorded a mechanics lien against the project property in the amount of $1,071,729.82, "without

consideration of, and despite, the substantial disputes concerning performance, delay, offsets, back charges, defective or incomplete work, closeout documents, and lienable amounts." (*Id.* at ¶ 61.) Midway demanded that Thomas Builders withdraw and release the lien, but Thomas Builders refused. The lien clouds Midway's title and interferes with its ability to finance, refinance, operate, and transact business related to the project.

Midway asserts the following counterclaims: Count I – Breach of Contract, Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing, Count III – Negligence/Professional Negligence, Count IV – Negligent Misrepresentation, Count V – Slander of Title, Count VI – Wrongful Recording of Mechanic's Lien; Declaratory Relief; Quiet Title, Count VII – Tortious Interference with Business/Contractual Relations, Count VIII – Unjust Enrichment/Restitution (Pled in the Alternative), and Count IX – Declaratory Relief.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544,

555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining

whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### *A. Contract Counterclaims (Counts I and II)*

The Counterclaim Defendant argues the contract counterclaims under Counts I and II are barred by the express terms of the parties' contract. Specifically, it argues those claims are barred by the consequential damages waiver contained in the AIA, "which precludes the recovery of any damages for 'rental expenses, for losses of use, income, profit, financing business and reputation.'" (Countercl. Def.'s Mem. at 5, quoting Document 1-2.) It asserts that the Counterclaim Plaintiff is bound by the AIA because that document was incorporated by reference in the Master Change Order. It contends that all the requirements for incorporation by reference are satisfied because it is undisputed the parties contemplated signing an AIA, the Counterclaim Plaintiff received the AIA prior to the Master Change Order being executed, and the Master Change Order provides that the parties agree to enter into an AIA. Alternatively, the Counterclaim Defendant asserts those claims should be subject to the damages limitation in the Proposal. It argues the Proposal explicitly references the AIA, the Counterclaim Plaintiff "admits that it is bound by the Proposal, which limits delay damages to $1,000 per day," and "the maximum recoverable damages for the alleged 18-month delay would be approximately $547,500." (*Id.* at 6.) It further argues the limitation is not a liquidated damages clause because it is not based on uncertainty or adjustment and instead is a cap on the maximum recoverable damages for delay.

The Counterclaim Plaintiff argues that its contract counterclaims are not barred by the Proposal, Master Change Order, or the unsigned AIA. It asserts that it plausibly alleged a breach of enforceable signed writings and that the Counterclaim Defendant's argument rests on the consequential damage waiver contained in the unsigned AIA, arguing the document was not incorporated by reference. The Counterclaim Plaintiff contends that it alleged "it did not execute the AIA, did not assent to be bound by everything contained in it, and did not agree that it would form any aspect of the parties' contract." (Countercl. Pl.'s Resp. at 6.) It contends that factual development is required to determine whether the Master Change Order's language that the parties "agree to enter an AIA 'Cost of the Work plus a Fee'" actually incorporated the unsigned AIA. It argues the conditions for the $1,000-per-day provision are merit questions that cannot be resolved on the pleadings, and to the extent that such provision is a liquidated damages clause or exclusive substitute for actual damages, questions regarding its enforceability require a fact sensitive inquiry.

The West Virginia Supreme Court has recognized that "parties may incorporate by reference separate writings together into one agreement." Syl. Pt. 2, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 752 S.E.2d 586 (W. Va. 2013). "However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement." Syl. Pt. 2, *id.; see also id.* at 595 (explaining that "[a]n oblique reference to a separate, non-contemporaneous document is insufficient to incorporate the document into the parties' final contract"). To determine whether a separate writing has been incorporated by reference, the West Virginia Supreme Court has adopted the following standard:

> To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that

> its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

Syl. Pt. 2, *id.* An unsigned document can be incorporated by reference so long as it satisfies the above-mentioned standard. *See Evans v. Bayles*, 787 S.E.2d 540 (W. Va. 2016).

The Court is unable to determine whether the AIA was incorporated by reference in the parties' contract in the absence of a developed record. Although the Master Change Order provides that the parties "agree to enter an AIA 'Cost of the Work plus a Fee,'" given the allegations in the Counterclaim that the AIA never formed the basis of the parties' contract and the Counterclaim Plaintiff never assented to it, as well as the fact that the AIA is unsigned, it is plausible that the parties never entered into the AIA and that the Counterclaim Plaintiff objected to it. While the Proposal appears to provide references that would bind the parties to the AIA, the parties entered into that agreement prior to the Counterclaim Plaintiff receiving the AIA. *Cf. Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 514 Fed.App'x 365, 369 (4th Cir. 2013) (rejecting the defendant's claim of surprise, finding that such a claim was undercut by the fact that when it received the standard terms and conditions referenced in the parties' purchase order, it "raised no objection to their applicability before beginning performance"). The Court is unable to determine from the contract alone whether the Counterclaim Plaintiff assented to the AIA. Given the allegations in the counterclaim, the Court withholds determining whether the AIA was incorporated by reference until it has received a more developed record. Therefore, the motion to dismiss, related to the contract counterclaims, should be denied.[1]

[1] At this stage, the Court declines the opportunity to address any issues related to the enforceability of the provision capping damages at $1,000 per day given that the applicability of the provision rests on factual issues related to whether the Counterclaim Defendant is completely at fault for the delay.

*B. Tort Counterclaims (Counts III, IV, V, VI, and VII)*

The Counterclaim Defendant argues that the Counterclaim Plaintiff's tort claims are barred by the gist of the action doctrine. It asserts the liability for the tort claims arises solely from the parties' contractual relationship, that it did not have an independent duty to provide design and construction services and that without the contract, there would be no counterclaim. It argues that the negligence and negligent misrepresentation counterclaims are based on its alleged failure to timely complete the project by the timeline established by the contract and that the slander of title, wrongful recording, and tortious interference counterclaims are based on the mechanic's lien recorded for the amount owed under the Proposal and Master Change Order. Therefore, it claims the tort counterclaims are duplicative of the contract counterclaims and are precluded. The Counterclaim Defendant argues the negligence counterclaim repeats the contract counterclaims that it "failed to properly supervise and conduct the work in [] order to meet the contract deadline," and the negligent misrepresentation counterclaim reasserts that it "'fail[ed] to provide accurate and timely information regarding project status and delays' and 'fail[ed] to provide. . . transparency regarding delays'". Further, it argues the slander of title, wrongful recording, and tortious interference duplicate the contract counterclaim that it "'maintain[ed] a wrongful' mechanic's lien and 'assert[ed] payment claims inconsistent with its own performance failures.'" (Countercl..'s Reply at 8, citing Countercl. at ¶¶ 89, 95, 113-17, 120, 130, 137.) In sum, it argues the success of the tort counterclaims depends on the success of the contract counterclaims.

The Counterclaim Plaintiff argues that the gist of the action doctrine does not necessitate dismissal where a pleading alleges independent duties and a special relationship. It asserts that it alleged there was a special relationship because the Counterclaim Defendant "held itself out as an

experienced hotel design-builder and general contractor," "possessed superior and unique knowledge," and "undertook advisory, supervisory, and information-supplying roles." (Countercl. Pl.'s Resp. at 12.) It claims that it alleged the Counterclaim Defendant "owed independent duties to exercise reasonable professional care, provide accurate information for Midway's business guidance, avoid negligent misrepresentations, avoid false and reckless lien filings, avoid slander of title, and refrain from tortious inference." (*Id.*) It argues that many of the cases cited by the Counterclaim Defendant are distinguishable and that this case is similar to *Tri-State Petroleum* given that it pled independent duties.

The gist of the action doctrine bars tort claims that are based on a breach of contract. *See Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013). To maintain a tort claim, the claim must "arise[] from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than a mere omission to perform a contract obligation." Syl. Pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619 (W. Va. 2002); *see also CIT Bank, N.A. v. Coffman*, 904 S.E.2d 466, 479 (W. Va. Ct. App. 2024) (explaining that "[w]hether a special relationship exists between the parties is also relevant as to whether the gist of the action doctrine applies"). Simply put, "the action in tort [must] arise independent of the existence of the contract." Syl. Pt. 9, *Lockhart*, 567 S.E.2d 619 (W. Va. 2002); *see also Cochran v. Appalachian Power Co.*, 246 S.E.2d 624, 628 (W. Va. 1978) ("If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or non-feasance, it is, in substance, an action on the contract, whatever may be the form of the pleading").

Under the gist of the action doctrine, tort claims are barred if any of the following factors are present:

> (1) where liability arises solely form the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy*, 746 S.E.2d at 577.

The Court finds the gist of the action doctrine bars the Counterclaim Plaintiff's tort claims for two reasons. First, liability for each of its alleged tort counterclaims arise solely from the contractual relationship between it and the Counterclaim Defendant. Although the Counterclaim Plaintiff alleges that there was a special relationship due to the Counterclaim Defendant's design/builder role, its superior expertise, and its advisory and information-supplying role, the Counterclaim Plaintiff has failed to cite any precedent indicating that West Virginia has recognized a special relationship under the alleged circumstances that would give rise to an independent duty. Moreover, under the facts presented here, the parties' relationship and duties would not have existed absent the construction contract.

Second, the Counterclaim Plaintiff's tort counterclaims essentially duplicate its contract counterclaims. Specifically, its negligence/professional negligence counterclaim (Count III) reasserts similar duties that were alleged to have been breached under its contract counterclaims.[2]

[2] Under its negligence/professional negligence counterclaim, the Counterclaim Plaintiff alleged that the Counterclaim Defendant had duties "to exercise reasonable care in professional construction services, to avoid foreseeable harm to Midway's property and business interests, to provide accurate information for Midway's guidance, and to refrain from conduct that would wrongfully cloud title or impair Midway's financing and business relationships." (Countercl. at ¶ 89.) The duties to "exercise reasonable care in professional construction services" and to avoid foreseeable harm are similar to the duties alleged under the breach of contract counterclaim "to timely and properly perform and coordinate the work," "to provide adequate manpower and supervision," "to adhere to the Project schedule and critical-path requirements, "to mitigate delay," "to ensure compliance with applicable law and licensing requirements," "to

The duty alleged under the negligent misrepresentation counterclaim (Count IV)[3] is similar to those alleged under the contract counterclaims requiring the Counterclaim Defendant "to provide required documentation and transparency regarding delays, costs, claims subcontractors, vendors, and closeout items," and to exercise good faith and fair dealing by "cooperat[ing] and communicat[ing] in good faith" and "provid[ing] accurate and timely information regarding project status and delays." (Countercl. at ¶¶ 89, 95.) Further, the counterclaims of slander of title, wrongful recording, and tortious interference (Counts V, VI, and VII) relate to the duty of good faith and fair dealing to not "assert[] payment claims inconsistent with its own performance failures" and "maintain a wrongful lien." (*Id.* at ¶ 95.)

The Counterclaim Plaintiff relies on *Tri-State Petroleum Corp. v. Coyne*, 814 S.E.2d 205 (W. Va. 2018) when asserting that its tort counterclaims are not duplicative of its contract counterclaims given that it alleged independent duties separate from failure to perform the construction contract. However, that case involved a breach of a fiduciary duty arising out of a special relationship between majority and minority shareholders, which would have existed regardless of the partnership and shareholder agreements in that case. *Tri-State Petroleum Corp.*

---

deliver the Project in a good and workmanlike manner within the time required," and "to meet contractual standards, requirements, and expectations," as well as the duty under the breach of the implied covenant of good faith and fair dealing counterclaim to exercise good faith and fair dealing by not unreasonably hindering and delaying performance. (*Id.*) The duty to provide accurate information is similar to those duties under the contract counterclaims "to provide required documentation and transparency regarding delays, costs, claims, subcontractors, venders and closeout items," and to exercise good faith and fair dealing by "cooperat[ing] and communicat[ing] in good faith" and "provid[ing] accurate and timely information regarding project status and delays." (*Id.* at ¶¶ 89, 95.) Lastly, the duty to refrain from conduct that would wrongfully cloud title or impair financing and business relationships is similar to the duty of good faith and fair dealing to not maintain a wrongful lien with reckless disregard for the Counterclaim Plaintiff's rights. (*Id.* at ¶ 95.)

[3] The duty alleged under the negligent misrepresentation counterclaim required the Counterclaim Defendant "to exercise reasonable care or competence in obtaining or communicating" information related to "anticipated dates of substantial completion, manpower and subcontractor capabilities, progress representations, compliance with licensing and legal requirements, payment entitlement, closeout status, delay responsibility, lienable amounts, and lien rights." (Countercl. at ¶¶ 110-11.)

*v. Coyne*, 814 S.E.2d 205, 218-19 (W. Va. 2018). Again, the Counterclaim Plaintiff has failed to allege a recognized special relationship or any duty that could be viewed as independent of the construction contract. The gist of the action doctrine therefore bars the Counterclaim Plaintiff's tort counterclaims which must be dismissed.[4]

*C. Unjust Enrichment (Count VIII)*

The Counterclaim Defendant argues that the Counterclaim Plaintiff's unjust enrichment counterclaim is precluded by the payment provisions of the Proposal and Master Change Order given that it relates to payments received pursuant to the contract. It further argues that although the Counterclaim Plaintiff pleads its unjust enrichment counterclaim in the alternative, it is precluded from doing so given that it has not denied the existence of an express contract governing the payments. It asserts that dismissal is not premature because regardless of whether the AIA was incorporated by reference, the payments were governed by the Proposal and the Master Change Order.

The Counterclaim Plaintiff argues that its unjust enrichment counterclaim is not barred, asserting that dismissal is premature and would ignore alternative pleading, which is permitted by Rule 8 of the Federal Rules of Civil Procedure. It further argues that although unjust enrichment claims are unavailable when an express contract governs the same subject matter, dismissal is still premature given that the parties dispute whether the AIA is enforceable, which terms govern particular payment and restitution issues, whether the Counterclaim Defendant "earned or retained amounts without proper basis, and whether certain benefits fall outside enforceable contract

[4] Given that the tort counterclaims are barred by the gist of the action doctrine, the Court does not address the remaining arguments related to those claims.

terms." (Countercl. Pl.'s Resp. at 19.) It asserts that "[u]ntil the Court determines what contract documents govern which issues, dismissal of Count VIII is premature." (*Id.*)

Under West Virginia law, a claim of unjust enrichment is ordinarily unavailable when there is an express contract that covers the same subject matter. *See* Syl. Pt. 2, *Gulfport Energy Corp. v. Harbert Private Equity Partners, LP*, 851 S.E.2d 817 (W. Va. 2020) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). "However, a plaintiff is permitted to plead unjust enrichment as an alternative to contract recovery when the terms of a contract or [the] parties to said contract are disputed." *S. Country Farms, Inc. v. Th Exploration, LLC*, No. 5:21-CV-84, 2021 WL 5147989, at *3 (N.D. W. Va. Nov. 4, 2021) (quoting *Span Constr. & Eng'g, Inc. v. Uwharrie Builders*, LLC, No. 3:18-CV-178, 2019 WL 1574233, at *2 (N.D. W. Va. Jan. 30, 2019) (internal quotation marks omitted).

The Court finds the unjust enrichment counterclaim is precluded by the express contract governing this matter. As alleged in its counterclaim, the Counterclaim Plaintiff and the Counterclaim Defendant entered into a Proposal for the construction of a hotel, which "included payment, retainage, claim, delay, and closeout provisions," as well as a Master Change Order. (Countercl. at ¶ 7.) Based on these allegations and review of the documents, it is clear that any disputed payments related to the construction of the hotel are explicitly governed by the Proposal and the Master Change Order.[5] Therefore, the unjust enrichment counterclaim should be dismissed.

[5] Although the Court has yet to determine whether the AIA is enforceable, that determination is not necessary to determine that the unjust enrichment counterclaim is precluded by the parties' undisputed, enforceable contract given that the Proposal and the Master Change Order govern payment related to the construction of the hotel.

*D. Declaratory Relief (Count IX)*

With respect to the final counterclaim, the federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction ... any court of United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a). The three requirements for a federal court to consider a declaratory judgment action are: "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction…; and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004). "We have held that a district court must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." *Id.* at 594 (noting that district courts have broad latitude in determining whether to exercise jurisdiction over declaratory judgment actions). Where a declaratory judgment claim in a "counterclaim is functionally duplicative of plaintiff['s]. . . complaint," with the same core question to be answered, courts may find that no useful purpose would be served by exercising jurisdiction over the declaratory judgment claim. *Brethren Mut. Ins. Co. v. Jai Dev, Inc.*, No. 7:21-cv-00316, 2023 WL 1991582, at *11 (W.D. Va. Feb. 14, 2023); *see also Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (collecting cases for the proposing that a declaratory judgment that seeks to adjudicate an existing breach of contract claim is duplicative or redundant and subject to dismissal).

The Court finds that exercising jurisdiction over the declaratory judgment counterclaim would be futile and inappropriate under these circumstances. The same core question with respect to the declaratory judgment counterclaim regarding whether the AIA is enforceable will be addressed through the Counterclaim Defendant's and the Counterclaim Plaintiff's breach of contract claims. The declaratory judgment counterclaim is duplicative, and therefore, should be dismissed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Dismiss Counterclaim* (Document 11) be **DENIED** as to the contract counterclaims (Counts I and II) but **GRANTED** as to the remaining counterclaims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 23, 2026

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA